## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMIEL L. WILLIAMS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:23-cv-00914** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **PICC MEDICAL DEPARTMENT,** | : | |
| **et al.,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

<u>Pro se</u> Plaintiff Jamiel L. Williams ("Plaintiff"), a convicted and sentenced state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), is currently incarcerated at State Correctional Institution Huntingdon ("SCI Huntingdon") in Huntingdon, Pennsylvania.  He commenced the above-captioned action by filing a complaint, asserting violations of his constitutional and federal rights while incarcerated there.  (Doc. No. 1.)  In accordance with the Prison Litigation Reform Act,[1] the Court has conducted an initial review of the complaint. For the reasons set forth below, the Court will dismiss the complaint, but afford Plaintiff the opportunity to amend his pleading.  In addition, the Court will deny without prejudice Plaintiff's motion seeking the appointment of counsel.  (Doc. No. 2.)

---

[1]  <u>See</u> The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

## I.   BACKGROUND

On June 5, 2023, Plaintiff filed his complaint and a motion seeking the appointment of counsel.  (Doc. Nos. 1, 2.)  On that same date, the Court issued a Thirty (30)-Day Administrative Order, directing Plaintiff to either pay the requisite filing fee or file a signed motion for leave to proceed in forma pauperis.  (Doc. No. 5.)  Plaintiff subsequently filed two (2) motions seeking leave to proceed in forma pauperis (Doc. Nos. 6, 8) and two (2) financial statements concerning his prison trust fund account (Doc. Nos. 7, 9).  The Court, having reviewed Plaintiff's motions and financial statements, will grant him leave to proceed in forma pauperis and will deem his complaint filed.[2]

In his complaint, Plaintiff has named the following defendants: SCI Huntingdon medical department; CHCA McCorkle, the "head of medical" at SCI Huntingdon; J. Rivello, the warden/facility manager at SCI Huntingdon; Starr, the chaplain of SCI Huntingdon; Keri Moore, the DOC's assistant chief grievance officer; D. Varner, the DOC's chief grievance officer; the Bureau of Health Care

---

[2]  After Plaintiff filed his complaint, he filed a motion to "[a]dd [e]vidence" to his pleading.  (Doc. No. 10.)  He seeks to attach (a) administrative grievance paperwork (Doc. No. 10-1) and (b) an article titled "Fifth Circuit Revives Suit by Nation of Gods and Earth Prisoner Demanding Religious Recognition by Texas Prison Officials" (Doc. No. 10-2).  The Court will grant Plaintiff's motion and deem these documents a part of his complaint.

Services;[3] the Philadelphia Industrial Correctional Center ("PICC") medical department; and John and Jane Does from the PICC medical department.  (Doc. No. 1 at 1, 2.)  In addition, Plaintiff has separated his complaint into two (2) sections, which are titled as: "FACTS – COMPLAINT #1" and "FACTS – COMPLAINT #2."  (Id. at 2, 3.)[4]

In "COMPLAINT #1[,]" Plaintiff sets forth the following allegations. Plaintiff entered DOC custody in June of 2019, at which time a doctor at the PICC medical department diagnosed him with diabetes and prescribed him metformin HCI 500 mg tablet.  (Id. at 2.)  Plaintiff took this mediation up until August 2021, when he was transferred to SCI Huntingdon.  (Id.)  Sometime after arriving at SCI Huntingdon, Plaintiff sent a "Request of Staff" to Paula Price and Dr. R. Malhui because he was not receiving his medication.  (Id.)  Plaintiff did not receive a reply

---

[3]  Plaintiff appears to be referring to the DOC's Bureau of Health Care Services. (Doc. No. 1 at 1, 2.)  The DOC's "Offices and Bureaus" can be located at the following address: https://www.cor.pa.gov/About%20Us/Pages/Offices-and-Bureaus.aspx.  One of those "Offices and Bureaus" is titled, "Health Care[.]"  See id.

[4]  In accordance with the legal standard set forth below, the Court accepts the allegations in "COMPLAINT #1" and "COMPLAINT #2" as true and draws all reasonable inferences therefrom in the light most favorable to Plaintiff.  See Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017).  In addition, the Court heeds the long-standing principle that pro se documents are "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Thus, Plaintiff's pro se complaint, "however inartfully pleaded," will be held to "less stringent standards than formal pleadings drafted by lawyers[.]"  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

from them, but, as he later found out, they no longer worked at SCI Huntingdon. (Id.)  As a result, Plaintiff went without his medication, including metformin, from August of 2021 to November of 2022.  (Id. at 3.)

Thereafter, in December of 2022, Plaintiff submitted "a religious form for a fast (not eating til [sic] sunset) from food for the month[.]"  (Id.)  It was at this time that the SCI Huntingdon medical department "noticed [he] was a diabetic and was asked to take a blood sample to be cleared to participate in the fast[.]"  (Id.)  The blood results revealed that his "levels" were "high" but "no medication is needed in December of 2022[.]"  (Id.)

Based upon the foregoing, Plaintiff claims that there was "Deliberate Indifference" and "NEGLECT" on the part of Defendant SCI Huntingdon medical department for failing to give him his medication and/or there was "MISDIAGNOSES" on the part of Defendant PICC medical department for diagnosing him with diabetes and prescribing him medication in the first place.  (Id. at 3, 4.)  Plaintiff further claims that Defendants Moore and Varner, the grievance officers, made a "wrong determination" and relied upon the "advice" of Defendant Bureau of Health Care Services, "which was wrong [and] they're all conspiring with eachother [sic]."  (Id. at 3.)

In "COMPLAINT #2[,]" Plaintiff sets forth the following allegations.  On April 12, 2022, Plaintiff was asked to disclose his religious preference, which is

"NATION OF GODS & EARTHS/FIVE PERCENT[.]"  (<u>Id.</u>)  Plaintiff filled out the religious form, and it was returned to him two (2) days later, on April 14, 2022.  (<u>Id.</u>)  SCI Huntingdon "does not have classes where he can practice his faith with fellow faithers[.]"  (<u>Id.</u>)  In addition, SCI Huntingdon has denied some of the "religious correspondence" that Plaintiff has sent to the "Founding School[,] ALLAH SCHOOL IN MECCA, 2122 7TH AVE NEW YORK, N.Y. 10027[.]"  (<u>Id.</u>)

Plaintiff "wrote" to Defendant Starr and asked why there are no classes for his religion, like there are for Christians, Catholics, and Sunni Muslims.  (<u>Id.</u>)  Plaintiff was directed to fill out a religious accommodation form with all members who would attend in order for the class to get approved.  (<u>Id.</u> at 3–4.)  Other religions at SCI Huntingdon, however, do not have to go through this process.  (<u>Id.</u> at 4.)  Based upon the foregoing, Plaintiff asserts that Defendant Starr violated his First and Fourteenth Amendment rights, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the Religious Freedom and Restoration Act ("RFRA").  (<u>Id.</u> at 3, 4.)

As for relief, Plaintiff seeks declaratory and injunctive relief, as well as monetary damages.  (<u>Id.</u> at 5.)  Plaintiff also seeks the costs of this suit, and he makes a demand for a jury trial.  (<u>Id.</u>)  Finally, Plaintiff requests any additional relief that the Court deems appropriate.  (<u>Id.</u>)

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2), district courts are required to review complaints in civil actions where a litigant is proceeding in forma pauperis.  See 28 U.S.C. § 1915(e)(2).  If the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief, then the district court must dismiss the complaint.  See id.  In dismissing claims under § 1915(e)(2), district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).  To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When evaluating the plausibility of a complaint, the Court is required to "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint."   See Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010); Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017) (stating that the court "must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]" (citation and internal quotation marks omitted)).

6

Additionally, in the specific context of <u>pro se</u> prisoner litigation, a district court must be mindful that a document filed <u>pro se</u> "is to be liberally construed." <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  A <u>pro se</u> complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted).

## III.   DISCUSSION

The Court treats Plaintiff's complaint as asserting violations of his First, Eighth, and Fourteenth Amendment rights pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983").  (Doc. No. 1.)  The Court also treats Plaintiff's complaint as asserting violations of RLUIPA and RFRA.  (<u>Id.</u>)

### A.   Section 1983

Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

<u>See</u> 42 U.S.C. § 1983.  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."

See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." See id. (citation omitted).

Additionally, in order to plausibly state a claim under Section 1983, Plaintiff must allege that each defendant was personally involved in the act or acts that he claims violated his federally protected rights.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."  Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).  Thus, in pursuing any Section 1983 claim against prison officials, a plaintiff may not rely solely on respondeat superior, see id. (citation omitted), which is a theory of liability that "arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm[,]" see Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (quoting Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 692 (1978)).

### 1.   Defendants McCorkle and Rivello

As an initial matter, the Court finds that there are a complete absence of factual allegations in the complaint which would establish how Defendants McCorkle and Rivello were personally involved in a violation of Plaintiff's constitutional rights.   See Dooley, 957 F.3d at 374 (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)); Thomas v. Tice, 948 F.3d 133, 138 (3d Cir. 2020) (explaining that, in order for a plaintiff to prevail under Section 1983, he must make "a showing that each defendant was personally involved in the alleged wrongdoing").   As such, any Section 1983 claims against Defendants McCorkle and Rivello will be dismissed.

### 2.   Defendants Moore and Varner

The Court next turns to Plaintiff's allegation that Defendants Moore and Varner, the DOC's grievance officers, made a "wrong determination" and relied upon the advice of Defendant Bureau of Health Care Services, "which was wrong [and] they're all conspiring with eachother [sic]." (Doc. No. 1 at 3.)  For the reasons discussed below, the Court finds that this allegation against Defendants Moore and Varner fails to satisfy Rule 8 of the Federal Rules of Civil Procedure.

Rule 8 sets forth the general rules of pleading.  See Fed. R. Civ. P. 8.  Rule 8(a) requires a pleading to contain, inter alia, "a short and plain statement of the

claim showing that the pleader is entitled to relief[.]"  See Fed. R. Civ. P. 8(a)(2).  In addition, Rule 8(d)(1) requires that "[e]ach allegation . . . be simple, concise, and direct."  See Fed. R. Civ. P. 8(d)(1).  Generally speaking, these Rules require a plaintiff to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests."  See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). This pleading standard requires more than legal labels and conclusory assertions: a complaint must include enough facts "to raise a right to relief above the speculative level[.]"  See Twombly, 550 U.S. at 555 (citations omitted).

Here, Plaintiff's allegation against Defendants Moore and Varner fails to meet this basic pleading standard.  Although the allegation is concise, the Court finds that the complaint fails to identify the specific legal theory supporting Plaintiff's allegation against these Defendants. More specifically, the Court finds that the complaint does not identify the specific constitutional right that these Defendants are alleged to have violated.  See, e.g., Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842 n.5 (1998) (noting that, in order to plausibly state a claim in a Section 1983 action, the plaintiff must "identify the exact contours of the underlying right said to have been violated" (citation omitted)).

Moreover, to that extent that Plaintiff asserts that Defendants Moore and Varner were "conspiring" with Defendant Bureau of Health Care Services, the Court

finds that such an assertion fails for two (2) reasons.  First, the allegation is entirely conclusory and, thus, is not entitled to the assumption of truth.  See Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 295 (3d Cir. 2018) (explaining, in the context of Section 1983, that "[t]he plaintiff must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action" (citation and internal quotation marks omitted)); Iqbal, 556 U.S. at 678 (stating that legal conclusions are "not entitled to be assumed true" (citation omitted)).  Second, Plaintiff has failed to identify the constitutional violation underlying the asserted conspiracy.  See Harvard v. Cesnalis, 973 F.3d 190, 207 (3d Cir. 2020) (explaining that a conspiracy claim under Section 1983 "requires that the state actors took concerted action based on an agreement to deprive the plaintiff of his constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights" (citation and international quotation marks omitted)).

Accordingly, for all of these reasons, the Court concludes that Plaintiff's Section 1983 claims against Defendants Moore and Varner are subject to dismissal for failure to satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure.  Additionally, the Court finds that Plaintiff's conspiracy claim against Defendants Moore and Varner is also subject to dismissal for failure to state a claim upon which relief can be granted.  As such, these claims will be dismissed.

### 3. Defendants SCI Huntingdon Medical Department and the Bureau of Health Care Services

In the complaint, Plaintiff names SCI Huntingdon medical department and the Bureau of Health Care Services as defendants. (Doc. No. 1 at 1, 2.) However, for the reasons discussed below, the Court finds that these Defendants have Eleventh Amendment immunity and, further, they are not considered "persons" for purposes of Section 1983.

"[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." Kentucky v. Graham, 473 U.S. 159, 169 (1985); Lombardo v. Pennsylvania, 540 F.3d 190, 194 (3d Cir. 2008) (explaining that "[t]he immunity of States from suit in the federal courts is a fundamental aspect of state sovereignty"). It is well-established that the Commonwealth of Pennsylvania has not waived this immunity, see 42 Pa. Const. Stat. Ann. § 8521(b), and that Congress did not abrogate the States' Eleventh Amendment immunity in enacting Section 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) (stating that "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties" (citation omitted)); Quern v. Jordan, 440 U.S. 332, 341 (1979) (explaining that Section 1983 does not override the States' Eleventh Amendment immunity). Further, this Eleventh Amendment immunity extends to all state agencies and

departments "having no existence apart from the state." See Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted).  As such, the DOC and its institutions, such as the SCI Huntingdon medical department and the Bureau of Health Care Services, are entitled to the same Eleventh Amendment immunity that the Commonwealth enjoys.  See 71 P.S. § 61(a).

Additionally, in order for Plaintiff to state a claim under Section 1983, he must allege that a "person" acting under the color of state law deprived him of his constitutional rights.  See Rehberg v. Paulk, 566 U.S. 356, 361 (2012).  However, a state agency, such as the DOC and its institutions and departments, are not considered "persons" for purposes of Section 1983 and, thus, are not amenable to suit under this statute.  See Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) (stating that a state agency may not be sued under Section 1983 because it is not a "person" for purposes of that statute); Foye v. Wexford Health Sources Inc., 675 F. App'x 210, 215 (3d Cir. 2017) (unpublished) (dismissing Section 1983 claims against the DOC and one of its institutions because they are entitled to Eleventh Amendment immunity and "are not persons subject to suit under" Section 1983); Robinson v. Bureau Of Health Care Services, No. 20-cv-01796, 2021 WL 4306116, at *5 (M.D. Pa. Sept. 22, 2021) (dismissing the DOC's Bureau of Health Care Services as a defendant since it is not a "person" for purposes of Section 1983).

Accordingly, for all of these reasons, the Court concludes that Plaintiff's complaint fails to state a claim upon which relief can be granted against the SCI Huntingdon medical department and the Bureau of Health Care Services. Any Section 1983 claims that Plaintiff has asserted against these Defendants will, therefore, be dismissed.

### B.    Rules 18 and 20 of the Federal Rules of Civil Procedure

In addition to the deficiencies discussed above, the Court also finds that Plaintiff's complaint fails to comply with Rules 18 and 20 of the Federal Rules of Civil Procedure. Rules 18 and 20 explain the circumstances in which multiple claims and multiple defendants may be joined in a single action. Rule 18 provides that "[a] party asserting a claim . . . may join . . . as many claims as it has against an opposing party." See Fed. R. Civ. P. 18(a). In other words, when an action pertains to only one defendant, a plaintiff may assert every claim that he has against that defendant, regardless of whether the Plaintiff's claims are factually or legally related to one another, subject to the limitations of federal subject-matter jurisdiction. See 7 Charles Alan Wright & Arthur Miller, et al., Federal Practice & Procedure § 1582 (3d ed.); see also Fed. R. Civ. P. 18(a).

When, however, a plaintiff seeks to join multiple defendants in a single action, Rule 20 becomes relevant. See Wright & Miller, supra, § 1655. More specifically, Rule 20 governs permissive joinder of parties and provides that a plaintiff may only

14

join multiple defendants in a single action if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences[,]" and (2) "any question of law or fact common to all defendants will arise in the action." See Fed. R. Civ. P. 20(a)(2).  Thus, notwithstanding the broad joinder-of-claims language of Rule 18(a), a plaintiff may join multiple defendants in a single action only if the plaintiff asserts at least one claim connecting all defendants that (1) arises out of the same transaction or occurrence and that (2) involves a common question of law or fact. See id.; Wright & Miller, supra, § 1655.  In other words, there must be at least one common claim against all of the named defendants. Once a plaintiff satisfies this requirement, he may invoke Rule 18 to assert "as many claims as [he] has" against one or more defendants, even if those additional claims are unrelated to the common claim linking all of the defendants.  See Fed. R. Civ. P. 18(a); Wright & Miller, supra, § 1655.

Here, the Court finds that Plaintiff's complaint violates Rule 20.  More specifically, the Court is unable to discern a single claim in his complaint that properly connects all of the named Defendants.  For instance, there is no obvious connection between the medical allegations contained under "COMPLAINT #1" and the religious accommodation allegations contained under "COMPLAINT #2." (Doc. No. 1 at 2–4.) Accordingly, under Rule 20, the Court concludes Plaintiff's

disconnected and unrelated claims cannot proceed against the numerous Defendants that he has named in the complaint.

In addition, the Court notes that Plaintiff's noncompliance with Rule 20 is particularly problematic in light of the Prison Litigation Reform Act ("PLRA"). Under the PLRA, the full filing fee must ultimately be paid by a prisoner-plaintiff in a non-habeas action. Thus, allowing a prisoner-plaintiff to include a number of independent claims in a single civil action without making the required connection among the joined defendants under Rule 20 would, effectively, circumvent the filing fee requirement of the PLRA. See, e.g., George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (explaining that "[u]nrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees" (citing 28 U.S.C. § 1915(g))); Sanders v. Rose, 576 F. App'x 91, 94 (3d Cir. 2014) (unpublished) (concluding that the district court did not abuse its discretion when it directed the prisoner-plaintiff to amend his original complaint in order to comply with the Federal Rules of Civil Procedure because the plaintiff had included a plethora of separate, independent claims, which would have circumvented the filing fee requirement of the PLRA (citing George, 507 F.3d at 607)).

**C.     Defendants PICC Medical Department and the Unknown Doctors and Nurses at the PICC Medical Department**

In his complaint, Plaintiff names Defendants PICC medical department and the Unknown Doctors and Nurses at the PICC medical department.  (Doc. No. 1 at 1, 2.)  Although it does not appear that the complaint asserts a standalone claim against Defendants PICC medical department or the Unknown Doctors and Nurses that work there, Plaintiff has alleged that Defendant PICC medical department misdiagnosed him.  (Id. at 3.)

Acknowledging this allegation, the Court observes that Defendant PICC medical department is located in Philadelphia, Pennsylvania and thus does not lie within the territorial boundaries of the Middle District of Pennsylvania.  Instead, it lies within the territorial boundaries of the Eastern District of Pennsylvania.  Thus, to the extent that Plaintiff is attempting to assert any Section 1983 claims against Defendant PICC medical department or the doctors or nurses that work there, such claims will be dismissed without prejudice to Plaintiff refiling his claims in the Eastern District.

**D.     Leave to Amend**

The next issue is whether Plaintiff should be granted leave to amend his amended complaint.  Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir.

17

2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id.  The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted."  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court finds that granting Plaintiff leave to amend his Section 1983 claims against Defendants SCI Huntingdon medical department and the Bureau of Health Care Services would be futile, as these Defendants have Eleventh Amendment immunity and are not considered "persons" for purposes of Section 1983.  Additionally, the Court finds that granting Plaintiff leave to amend his Section 1983 claims against Defendant PICC medical department and the doctors and nurses that work there would also be futile since the proper venue for these claims is the Eastern District of Pennsylvania.

18

The Court cannot say, however, that granting Plaintiff leave to amend his claims against Defendants McCorkle, Rivello, Moore, Varner, and Starr would be futile and, thus, the Court will grant Plaintiff an opportunity to amend his claims in order to attempt to cure the deficiencies identified above. Plaintiff is advised that the amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the complaint or any other document already filed.  The amended complaint shall set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure, and it must also comply with Rules 18 and 20 governing the joinder of claims and defendants in a single action.  Finally, Plaintiff is cautioned that neither conclusory allegations nor broad allegations will set forth a cognizable claim.

### E.      Motion Seeking the Appointment of Counsel

Finally, the Court turns to Plaintiff's motion seeking the appointment of counsel.  (Doc. No. 2.)  In his motion, Plaintiff asserts that he has requested leave to proceed in forma pauperis and that he cannot afford counsel to represent him in this litigation.  (Id. at 1.)  Plaintiff also asserts that the issues in this case are complex, will require significant research and investigation, and will involve conflicting testimony.  (Id.)  In addition, Plaintiff claims that counsel will be better able to present evidence and cross examine witnesses.  (Id.)  Finally, Plaintiff explains that

his imprisonment will greatly limit his ability to litigate this case.  (Id. (alleging that he has limited access to the prison's law library).)

The Court begins its discussion with the basic principle that, although indigent civil litigants have no constitutional or statutory right to the appointment of counsel, district courts have broad discretionary power to request appointed counsel for such litigants pursuant to 28 U.S.C. § 1915(e)(1).  See Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002) (citations omitted).  The Third Circuit has "outlined a two-step process" that district courts are to follow when deciding whether to request appointed counsel to represent an indigent civil litigant.  See Houser v. Folino, 927 F.3d 693, 697 (3d Cir. 2019).

First, as a threshold inquiry, the district court must consider whether the plaintiff's case has some arguable merit in fact and law.  See Montgomery, 294 F.3d at 498-99 (citations omitted).  Second, if the district court determines that the plaintiff's case has some arguable merit in fact and law, then the district court is to consider other factors, including: (1) the plaintiff's ability to present his own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be required and the plaintiff's ability to pursue such investigation; (4) the extent to which the case is likely to turn on credibility determinations; (5) whether the case will require testimony from expert witnesses; and (6) whether the plaintiff can attain

20

and afford counsel on his own behalf. <u>See</u> <u>Houser</u>, 927 F.3d at 697 (citations omitted).

This list, however, "is not meant to be exhaustive." <u>See</u> <u>Tabron v. Grace</u>, 6 F.3d 147, 157 (3d Cir. 1993); <u>see also</u> <u>Houser</u>, 927 F.3d at 700 (stating that "[w]e have always emphasized that [these] factors are only a guidepost for district courts in their exercise of the broad statutory discretion granted to them by Congress[,] and that "[t]hey are not exhaustive, nor are they each always essential"). Rather, the district court must determine on a case-by-case basis whether a request for appointed counsel is warranted. <u>See</u> <u>Tabron</u>, 6 F.3d at 157-58.

Having reviewed Plaintiff's motion, the Court concludes that the appointment of counsel is not warranted at this time. Under the two (2)-step process outlined above, the Court must consider whether Plaintiff's case has some arguable merit in fact and law and, if so, whether the pertinent factors warrant the appointment of counsel. <u>See</u> <u>Houser</u>, 927 F.3d at 697.

Here, the Court cannot say that Plaintiff's case has arguable merit in fact and law since the Court will—as discussed above—dismiss his complaint for failure to state a claim upon which relief can be granted. However, even if the Court were to assume that Plaintiff's case has some arguable merit in fact and law, the Court would still deny his motion for the appointment of counsel at this time. The Court finds that Plaintiff has demonstrated the ability to read, write, and understand English, as

well as the apparent ability to litigate this action pro se, as illustrated by the filing of

his complaint (Doc. No. 1), his motion to "[a]dd [e]vidence" to his complaint (Doc.

No. 10), his motions for leave to proceed in forma pauperis (Doc. Nos. 6, 8), as well

as his instant motion seeking the appointment of counsel (Doc. No. 2). Accordingly,

given the Court's duty to liberally construe Plaintiff's pro se pleadings, see Riley v.

Jeffes, 777 F.2d 143, 147-48 (3d Cir. 1985), coupled with his apparent ability to

litigate this action, the Court concludes that the appointment of counsel is not

warranted at this time.

Additionally, with respect to Plaintiff's concerns regarding limited resources

at the prison's law library, the Court notes that, if he were to need extensions of time

to respond to filings and Orders in this matter, which would require a response from

him, then he need only request an extension from the Court at the appropriate time.

And, finally in the event that future proceedings would otherwise demonstrate the

need for counsel, then the Court may reconsider this matter either sua sponte or upon

a motion properly filed by Plaintiff.

## IV.    CONCLUSION

To conclude, the Court will grant Plaintiff leave to proceed in forma pauperis,

deem his complaint filed, and dismiss his complaint for failure to state a claim upon

which relief can be granted.  (Doc. Nos. 1, 6, 8.)  In addition, the Court will deny

without prejudice Plaintiff's motion seeking the appointment of counsel.  (Doc. No.

2.)  Finally, the Court will grant Plaintiff an opportunity to amend his pleading.  An appropriate Order follows.

Dated: September 6, 2023                    s/ Sylvia H. Rambo
                                           SYLVIA H. RAMBO
                                           United States District Judge